UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:                                                                         Chapter 7

BENJAMIN HIRSCH,                                                Case No. 1-02-17966 - dem

              Debtor
----------------------------------------------------------------X

# DECISION AND ORDER ON APPLICATION FOR PAYMENT OF PROFESSIONAL FEES FOR LEGAL SERVICES

APPEARANCES:

Gerard A. Riso, Esq.
Beth E. Spickler, Esq
Stein Riso Mantel, LLP
Attorneys for Debtor Benjamin Hirsch
405 Lexington Avenue
New York, New York 10174

Joseph J. Haspel, Esq.
Attorney for Debtor Benjamin Hirsch
40 Mathews Street, Suite 201
Goshen, New York, 10924

Gary M. Kushner, Esq.
Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn
Attorneys for Nachama Hirsch
330 Old Country Road
P.O. Box 31
Mineola, New York 11501

Peter Sklarew, Esq.
Bonnie Perlin, Esq.
United States Department of Justice, Tax Division
P.O. Box 227
Ben Franklin Post Office
Washington, DC. 20044

Brian J. Hufnagel, Esq.
Diana G. Adams, Esq.
Office of the United States Trustee
271 Cadman Plaza East, Room 4529
Brooklyn, New York 11201

Bruce Weiner, Esq.
Robert J. Musso, Esq.
Rosenberg Musso & Weiner
Attorneys for Chapter 7 Trustee
26 Court Street
Brooklyn, New York 11242

DENNIS E. MILTON
United States Bankruptcy Judge

This is the Decision and Order of this Court concerning the Final Fee Applications of the law firm of Stein Riso Mantel, LLP ("Stein Riso") as counsel for the debtor Benjamin Hirsch (the "debtor") and Joseph J. Haspel, Esq. ("Haspel") as special counsel to the debtor (the "Applications"). Stein Riso has applied for an Order approving a total payment of $232,675.31 in legal fees and expenses. Haspel has applied for an Order approving a total payment of $139,913.89 in legal fees and expenses. The Office of the United States Trustee ("US Trustee"), counsel for the Internal Revenue Service ("IRS) and the Chapter 7 Trustee (the "Trustee") have argued that the Applications should be denied, or, if granted, that the amount awarded reflect a substantial reduction from the payment amounts requested. The Court finds that a substantial reduction in the amount of the award is warranted in light of the counsels' failure to acknowledge the existence of a fiduciary duty to the debtor's estate, the results obtained and deficiencies in the billing documents submitted. As set forth more fully below, the Court grants the Applications as follows: the Court awards Stein Riso and Haspel a total of One Hundred Eighty Thousand Dollars ($180, 000.00), without conditions or limitations of any kind, to be allocated between Stein Riso and Haspel as they deem appropriate. The amount is to be distributed as follows: $150,000.00 within ten days of this Decision and Order, and $30,000.00 upon the final meeting of creditors.

JURISDICTION

This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§1334(b) and 157(b)(2) and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of facts and conclusions of law to the extent Fed. R. Bank. P. 7052 requires.

FACTUAL BACKGROUND

A. Prior Proceedings

On June 12, 1997, Nachama Hirsch ("Mrs. Hirsch") commenced divorce proceedings (the "matrimonial action") against the debtor in the Supreme Court of New York (the "state court"). On October 30, 2000, the Honorable Virginia E. Yancey ("Justice Yancey") rendered a decision granting the divorce. Justice Yancey stayed entry of the judgment of divorce pending resolution of ancillary issues, including the equitable distribution of marital property. On May 22, 2001, Justice Yancey found the debtor in contempt of court for repeated violations of court orders to preserve the marital properties (the "properties"). By Order dated May 31, 2001, the state court appointed Jeffery Goldstein as temporary receiver for the properties. On December 21, 2001, the temporary receivership ended and the state court appointed a successor temporary receiver, Douglas Rosenberg. On May 10, 2002, the state court issued a Decision After Trial ("state court decision") in the matrimonial action. The state court directed the parties to settle judgment consistent with the state court decision.

On June 21, 2002, before the state court entered judgment based on the state court decision, the debtor and Coney Island Land Company, LLC, Fiduciary Holdings, LLC, Digby Apartments, Inc., and Sheldrake Holding Company, LP (the "Entity Debtors") filed separate

3

Chapter 11 petitions.

Familiarity with the facts underlying these applications is assumed, as this case, which is now almost six and one half years old, has been the subject of numerous applications which have resulted in written decisions and orders.  Among those are the decision of this Court keeping Douglas Rosenberg, the state court appointed Receiver, in place; a decision in March 2003 that the state court's post-petition entry of judgment, occurring while the automatic stay was in place, did not transfer the properties to Mrs. Hirsch; the Decision and Order fixing the claim of Mrs. Hirsch; the determination of two adversary proceedings which Mrs. Hirsch brought and which sought a determination that certain properties were not part of the debtor's or the Entity Debtors' estates; denial of the separate applications of secured creditors Wells Fargo, Tsatkis and Maspeth Federal Savings & Loan Association for relief from the automatic stay; the decision granting relief from the automatic stay in February 2004 to enable the parties to pursue entry of judgment in the matrimonial action; a decision expunging claims of Mrs. Hirsch against the entity debtors' estates; and the Decision and Order denying the debtor's application for an order permitting the sale of certain real estate to go forward outside of the debtor's Plan of Reorganization, granting approval of the debtor's Fifth Amended Disclosure Statement and Third Amended Plan of Reorganization and thereafter converting the debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code in January  2007.

B. The Applications of Counsel and Special Counsel for the Debtor

By Notice of Motion dated June 21, 2007, Stein Riso filed an Application for a Final Fee Allowance for professional services rendered the debtor from June 19, 2002 through January 4, 2007.  In the Application, Stein Riso requested approval of an award of payment as

follows:

    Total Fee Award Requested: $ 223,690.75
    Total Expenses: $ 10,334.56
    Less Retainer $ 1,350.00
    Combined Total: $ 232,675.31

By Notice of Motion dated June 27, 2007, Joseph J. Haspel, Esq., Special Litigation Counsel for the debtor Hirsch, filed an Application for a Final Fee Allowance for professional services rendered the debtor from June 19, 2002 through January 4, 2007. In the Application, Haspel requested approval of an award of payment as follows:

    Total Fee Award Requested: $ 141,892.50
    Total Expenses: $ 521.39
    Less Retainer $ 2,500.00
    Combined Total: $ 139,913.89

    C.    The Objections

Three entities filed Objections in response to the Applications. On or about August 9, 2007, the US Trustee filed an Objection. Although it had no objection to the debtor's retention of Stein Riso and Haspel in July 2002, the Office of the United States Trustee raised for the first time in this Objection the claim that the law firms represented the debtor while holding an undisclosed conflict of interest. The US Trustee maintained that Stein Riso and Haspel, in representing the debtor and the Entity Debtors, had an actual conflict of interest because the estates had competing and adverse interests.[1] The US Trustee claimed that failure to disclose that the state court decision had found certain transfers from the debtor to the Entity Debtors and another entity were fraudulent conveyances was evidence of a conflict of interest which should

---

[1] The US Trustee also failed to advance this argument when it authorized the payment of Professional Fees to Stein Riso in the Entity Debtors' case

warrant the denial of compensation.

In addition, the US Trustee objected to the award of compensation in the amount sought on the grounds, <u>inter</u> <u>alia</u>, that the poor results did not authorize such an award; the request included time spent on pre-petition services as well as for post conversion services; the time sheets reflected excessive inter-office conferences, an inadequate apportionment of work, improper block entries, insufficient detail and otherwise failed to comply with guidelines of the Office of the United States Trustee.

The IRS also filed an Objection. In its Objection, the IRS argued that this Court should deny compensation to counsel for the debtor entirely in light of the alleged conflict of interest in counsel's representation of the debtor and the Entity Debtors. In addition, the IRS objected concerning deficiencies in the applications and requested a period of discovery, to be followed by a preliminary hearing and evidentiary hearing.

Finally, the Trustee filed an Objection on September 7, 2007. Although he acknowledged that he had no personal knowledge of events that occurred prior to the date of conversion, January 5, 2007, the Trustee argued from a review of the document that the payments sought were excessive. In addition, the Trustee stated that the applicants should have commenced an adversary proceeding against the debtor because the debtor had retained control of certain assets and kept them beyond the reach of creditors. The Trustee further stated that the applicants should have commenced another adversary proceeding against the debtor and the Entity Debtors as an additional basis for denial of compensation.

D.       The October 2007 Hearing- The Proposed Settlement

On October 23, 2007, this Court conducted an initial hearing on the Applications. On the eve of the hearing on the Applications, the IRS, Stein Riso and Haspel reached a settlement of the IRS Objections to the fee requests (the "Proposed Settlement"). The Proposed Settlement provided, in substance, that the IRS agreed not to object to allowed fees and expenses totaling $180,000.00 to be allocated between Stein Riso and Haspel as they deemed appropriate.[2] Since the Proposed Settlement did not bind the US Trustee or the Trustee, and the Trustee had not finalized his strategy, the Court adjourned the hearing to allow them to review the terms of the Proposed Settlement.

On November 5, 2007, the Trustee filed a Response to the Proposed Settlement. The Trustee argued that a fatal conflict of interest existed in the law firm's and Haspel's representation of the debtor and that they failed to pursue fraudulent conveyance claims. The Trustee stated that he intended to pursue such actions if not barred by Section 546 of the Bankruptcy Code. The Trustee also intended to pursue malpractice and conflict of interest claims against the law firm and Haspel. Although the Trustee noted that some courts have required such malpractice claims to be brought as counter claims to the fee applications or be waived, he believed to have proceeded in that manner in this case would not have been in the best interests of the estate. Accordingly, the Trustee conditioned his consent to the Proposed Settlement upon the law firm's and Haspel's affirmative waiver of all res judicata claims,

---

[2] At the October 23, 2007 hearing, the Trustee advised the Court that he would be seeking to void certain allegedly fraudulent transfers between the debtor and the Entity Debtors and/or the Hirsch Family Trust. The Trustee further advised this Court that he would consider commencement of a malpractice case against the debtor's law firm for not pursuing such actions. This Court has previously found that the allegedly fraudulent transfers, which were the subject of the decision of the state court in the Hirsch matrimonial action, were unwound by the Entity Debtors in their Chapter 11 case whereby they paid the dollar value equivalent of the net equity of the properties in an amount which the state court determined.

7

collateral estoppel claims, issue preclusion claims and other defenses which they might have following a court award of fees. The Trustee also requested that distribution of any fees awarded not be made until the final meeting of creditors in this chapter 7 case. Trustee's Response to Proposed Settlement dated November 5, 2007 at 3-4.

The US Trustee also filed a Response to the Proposed Settlement. The US Trustee did not object to the dollar amount of the Proposed Settlement but objected to the Proposed Settlement unless the order contained "language explicitly providing that any other awarding compensation will not be used by [Stein Riso] and Haspel (i) as a defense to any actions brought by the Chapter 7 trustee, or (ii) as a basis for evidentiary exclusion." Statement of United States Trustee in Response to Settlement Proposal dated November 6, 2007 at 1-2.

Stein Riso and Haspel filed a reply to these Responses in which they claimed that the objections should be overruled in that they were based on the faulty premise that the law firms operated under a conflict of interest to the detriment of the debtor's estate. They argued that this Court's finding that the sums which the Entity Debtors paid through their confirmed Chapter 11 Plan were sufficient to unwind the fraudulent conveyances found by the state court meant that actions of the law firms had not resulted in any loss to the debtor Hirsch's estate. In addition, the law firms argued that the failure of the US Trustee to object to their retention, at or about the time of retention more than five years earlier, when the facts underlying the alleged conflict of interest advanced in their current objection were known to the Court, did not warrant the denial of their fee application or a substantial reduction in the amount awarded. Affidavit of Beth E. Spickler, Esq. dated November 19, 20007 in Response to Objections of the United States Trustee; the United States; and the Chapter 7 Trustee to the Final Fee Application of Stein Riso Mantel, LLP at 3-8; Affirmation of Joseph Haspel, Esq. dated November 20, 2007 in Response

to Objections of the United States Trustee; the United States; and the Chapter 7 Trustee to the Final Fee Application of Joseph J. Haspel at 3 and 9.

On November 27, 2007, the Court conducted a hearing on the Applications. At this hearing, counsel for the Trustee cited two new cases for additional support of his claim that the debtor Hirsch's attorneys had a fiduciary duty to the debtor's estate and had breached that duty in the chapter 11 case. Counsel for the debtor argued that they had no such duty. The Court granted counsel for the debtor additional time to submit a response to this claim. By letter dated December 4, 2007, counsel for the debtor attempted to distinguish the cases upon which the Trustee had relied and argued that they as counsel for the debtor in possession owed no fiduciary duty to the debtor Hirsch's estate.

The Court then took the matter under advisement.

## DISCUSSION

### POINT ONE

An Award of Counsel Fees is Warranted. The Award Must
Reflect A Substantial Reduction From the Amount Sought
Because the Legal Fees and Expenses Billed Exceed the
Reasonableness Standard of Section 330 of the Bankruptcy Code.

Section 330 of the Bankruptcy Code governs the application for payment of professional fees for legal services rendered by counsel retained by bankruptcy court order to represent the debtor.

1. Assessing Reasonable Attorneys' Fees

Here, Stein Riso has applied for an Order approving a total payment of $232,675.31 in legal fees and expenses and Haspel has applied for an Order approving a total payment of $139,913.89 in legal fees and expenses. The United States Trustee objected to the

awarding of any fees on the ground that the firms represented the debtor while holding an undisclosed conflict of interest.  In addition, the United States Trustee objected to the amount of fees requested stating that the legal fees and expenses billed exceeded the reasonableness standard set forth in Section 330(a) of the Bankruptcy Code on the grounds, <u>inter alia</u>, that the poor results did not authorize such an award; the request included time spent on pre-petition services as well as for post conversion services; the time sheets reflected excessive inter-office conferences, an inadequate apportionment of work, improper block entries, insufficient detail and otherwise failed to comply with guidelines of the Office of the United States Trustee.  The Court will review the propriety of fees and expenses under the reasonableness guidelines of Section 330(a) of the Bankruptcy Code.[3]

> Section 330(a)(3) provides:
>
> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial to the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience

---

[3] The Court notes that even in non-bankruptcy cases, an applicant requesting an award of fees has the burden to prove the reasonableness of such fees and vague and otherwise insufficient descriptions of services often results in a denial or reduction in the amount of fees sought.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); <u>Quarantino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir.1999); <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748,763-64 (2d Cir.1998); <u>New York State Ass'n for Retarted Children v. Carey</u>, 711 F.2d 1136, 1147 (2d. Cir.1983).

>in the bankruptcy field; and
>(F) whether the compensation is reasonable based on the customary
>compensation charged by comparably skilled practitioners in cases
>other than cases under this title.

11 U.S. C. § 330. Rule 2016(a) of the Federal Rules of Bankruptcy Procedure implements the

standards set forth in Section 330 of the Code:

>Application for Compensation or Reimbursement. An entity
>seeking interim of final compensation for services, or
>reimbursement of necessary expenses, from the estate shall file
>with the court an application setting forth a detailed statement
>of (1) the services rendered, the time expended and expenses
>incurred, and (2) the amounts requested.

Fed.R.Bankr.P. 2016(a). To satisfy this burden, a claimant must justify its charges with detailed, specific, itemized documentation. In re Dimas, LLC, 357 B.R. 563, 576 (Bankr. N.D.Cal. 2006); In re Bennett Funding Group Inc., 213 B.R. 234, 244 (Bankr. N.D.N.Y. 1997); In re Poseiden Pools of America, Inc. 180 B.R.718, 729 (Bankr. E.D.N.Y. 1995), affirmed 216 BR. 98, 100 (E.D.N.Y. 1997). Billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, their level of experience and that person's hourly rate. In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D.Vt. 2006). The records must be detailed enough to enable a court to determine whether the attorneys are claiming compensation for hours that are "redundant, excessive, or otherwise unnecessary." Hensley, 461 U.S. at 434. See also In re Recycling Industries, Inc., 243 B.R. 396, 401 (Bankr. D.Colo. 2000); In re Poseidon Pools of America, 180 BR. at 729. Also the billing practice of aggregating multiple tasks into one billing entry, typically referred to as "block billing," is routinely disallowed. This is because the practice of block billing makes it exceedingly difficult for a court to determine the reasonableness of the time spent on each of the individual services or

tasks provided. In re Dimas, LLC, 357 B.R. at 576; In re Fibermark, Inc., 349 B.R. at 395; In re Poseidon Pools of America, 180 B.R. at 729; Matter of Navis Realty, Inc., 126 B.R. 137, 144 (Bankr. E.D.N.Y. 1991). Consequently, courts will summarily disallow time for discrete legal services merged together in a fee application.

### A. Disallowance Based Upon Improper Block Billing

As noted above, fee applications which contain block billing are difficult to review because a court has no way to determine how much time an attorney or paralegal spent on an individual task listed in the group of tasks billed. In re Fibermark, Inc., 349 B.R. at 395; In re NWFX, Inc., 267 B.R. 118, 230 (Bankr.W.D.Ark 2001); In re Poseidon Pools of America, 180 B.R. at 729; Matter of Navis Realty, Inc., 126 B.R. at 144. A professional is required to bill each task separately. In re Fibermark, Inc., 349 B.R. at 395. That way, a court can scrutinize the reasonableness of the time expended and counsel is not tempted to inflate the actual time spent and group multiple tasks together hoping to camouflage the true length of an individual task. See Molefi v. The Oppenheimer Trust, 2007 WL 538547,*7 (E.D.N.Y. February 15, 2007); In re Peterson, 2004 WL 1895201,*4 (Bankr. D.Idaho 2004). Several bankruptcy courts have observed that block billing is not favored because

> One, it permits an applicant to claim compensation for rather
> minor tasks which, if reported individually, would not be
> compensable. Two, it prevents the Court from determining
> whether individual tasks were expeditiously performed within
> a reasonable period of time because it is impossible to
> separate into components the services which have been lumped
> together.

In re Worldwide Direct, Inc., 316 B.R 637, 643 (Bankr. D.Del. 2004) (quoting In re Leonard Jed Co., 103 B.R. 716, 713 (Bankr. D.Md. 1989)). It is especially difficult for a court to evaluate reasonableness when a group of attorneys block bill and work together on a task without

12

differentiation as to how much time each attorney spent on that task. This is because it is unfeasible for a court to tell if attorneys' work is complimentary, and not duplicative, since block billing prevents a court from knowing whether one attorney is primarily working on a task, and thus billing more hours, while another is simply reviewing and revising. See Steffen v. Senterfitt, 2007 WL 1601750, *5 (M.D. Fla. June 1, 2007); Daiwa Special Asset Corp. v. Desnick, 2002 WL 31767817, *3 (S.D.N.Y. 2002); In re Malden Mills Industries, 281 B.R. 493, 498 (Bankr. D.Mass. 2002). See also In re Worldwide Direct, 316 B.R. at 643. The United States Trustee has argued that the billing records here evidence a substantial amount of block billing warranting a reduction[4].

Upon review, the Court finds that the US Trustee has established the presence of shortcomings contained in the time entries sufficient to warrant a substantial adjustment. The award in this case reflects this reduction. Courts have found that across the board percentage cuts in the fees claimed are routinely utilized so that courts do not misuse their time "set[ting] forth item-by-item findings concerning what be countless objections to individual billing items", when the billing records are voluminous, as they are in this dispute. McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006); Williamsburg Fair Housing Committee v. The New York City Housing Authority, 2007 WL 486610,*5 (S.D.N.Y. February 14, 2007); Daiwa Special Asset Corp., 2002 WL 31767817,*2 (citing Lunday v. City of Albany,

---

[4] In instances where block billing occurs, courts have reduced legal fees in varying percentages ranging from 5% to 100%. See e.g., In re Charis Hosp., LLC, 360 B.R. 190,200 (Bankr. M.D.La. 2007)(court disallowed 50% of block billed time entries); In re Dimas, LLC, 357 B.R. at 580-82 (court disallowed 100% of block billed time entries); In re Teraforce Technology Corp., 347 B.R 838, 857 (Bankr. N.D.Tex. 2006)(court disallowed 50% of block billed time entries); Gundlach v. Nat'l Ass'n for Advancement of Colored People, Inc., 2005 WL 2012738 (M.D. Fla. August 16, 2005)(court utilized a 30% reduction of the total legal fees claimed due to use of block billing); In re Worldwide Direct, Inc., 316 B.R. at 643 (lump sum reduction due to block billed entries) Sec. And Exch. Comm'n v. Mobley, 2000 WL 1702024, *2 (S.D.N.Y. November 13, 2000)(lump sum reduction due to block billed time entries); In re Recycling Industries, Inc., 243 B.R. at 406-07(court disallowed 5% of total legal fees claimed due to use of block billing).

42 F.3d 131, 134 (2d Cir. 1994)).  See also In re Poseidon Pools of America, 180 B.R. at 751; In re Navis Realty, Inc., 126 B.R. at 144; In re Adventist Living Ctrs., Inc., 137 B.R. 701, 706 (Bankr. N.D.Ill. 1991).

### B. Disallowance Based Upon Vague and Inadequate Entries

In order to enable the Court to determine whether the time expended is reasonable, time entries such as meetings, conferences, correspondence and telephone calls must identify the participants, describe the substance of the communications, explain its outcome and justify its necessity. In re Brous, 2007 WL 1705630,*9 (Bankr. S.D.N.Y. June 12, 2007); In re Fibermark, Inc., 349 B.R. at 396; In re Southern Diesel, Inc., 309 B.R. 810, 813 (Bankr. M.D.Ala. 2004); In re Hasset, Ltd., 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002).  Likewise, with respect to research or reviewing materials, the time entries must at a minimum provide a description of the issue that is being researched or reviewed.  Entries that contain such vague characterization of the services performed as "meeting with", "conversations with", "review materials or docket" and "draft correspondence to" fail to adequately describe the services provided and are routinely disallowed.   Upon review, the Court further finds that the United States Trustee has established the presence of shortcomings contained in the time entries sufficient to warrant a substantial adjustment.  The award in this case reflects this reduction.

### 2.     Assessing Reasonable Attorneys' Costs

Section 330(a)(1)(B) of the Bankruptcy Code states that a professional seeking reimbursement from the estate for expenses incurred in the case must furnish the Court with records containing enough specificity to establish whether a given expense was both actual and necessary.  Only fully documented expenses are reimbursable. In re Fibermark, 349 B.R. at 398.

### 3.  The Amount of the Award

Prior to the hearing on October 23, 2007, Stein Riso, Haspel and the IRS had reached a Proposed Settlement in which they agreed that the amount of the award would be $180,000.00. In the Court's view, this amount represented a reasonable compromise and an adequate reduction of fees in light of the deficiencies which the Office of the United States Trustee has found and brought to the Court's attention.

Subsequently, the US Trustee, the IRS and the Trustee objected to the Proposed Settlement. These objections went not so much to the proposed amount as to the conditions under which the amount would be awarded and/or distributed. Following any of these proposals would deny the payment of funds to counsel who have diligently performed legal services on behalf of the debtor for over five years and on that ground alone would be close to unconscionable. But, when viewed separately, each of these objections is without merit. More than five years after it had approved the retention of counsel, and more significantly, commenced monitoring the case on an active basis, the Office of the United States Trustee would have this Court deny payment to counsel now due to failure to disclose facts allegedly constituting a conflict of interest arising from representation of the debtor and the entity debtors. This objection fails not only because of the unfairness in the timing of the assertion but also because those facts were disclosed to the Court, albeit by Mrs. Hirsch and not the debtor, prior to the Court's issuance of the Orders of retention in 2002. At the October 23, 2007 and November 27, 2007 hearings, the Trustee advised this Court that he would be seeking to void certain allegedly fraudulent transfers between the debtor and the Entity Debtors and/or the Hirsch Family Trust. This Court has previously found that the allegedly fraudulent transfers, which were the subject of the decision of the state court in the Hirsch matrimonial action, were unwound by the Entity Debtors in their chapter 11 case whereby they paid the dollar value equivalent of the net equity

15

of the properties in an amount which the state court determined. The Trustee argued that he intended to pursue malpractice and other claims against Stein Riso and Haspel, and that no funds should be awarded or, if funds were awarded, they not be disbursed prior to the resolution of those actions or the final meeting of creditors. Yet in the almost two years in which the case has been assigned to him, the Trustee has not commenced a single proceeding.

POINT TWO

Counsel for the Debtor Owes a
Fiduciary Duty to the Debtor's Estate

In their Objections to the fee applications, counsel for the Trustee argued that the counsel for the debtor Hirsch had a fiduciary duty to the debtor's estate and its creditors, as opposed to the individual debtor. At the hearing on November 27, 2007, counsel for the Trustee cited two cases in support of this position. In response, counsel for the debtor claimed that those cases concerned corporate debtors and not an individual debtor, in a chapter 11 case, and involved concerns regarding interests of third parties not implicated in this case. Spickler letter dated December 4, 2007 at 1.

Counsel's attempt to distinguish the Trustee's argument is not persuasive. The attorney for a chapter 11 debtor in possession is a fiduciary of the debtor's estate. In re Food Management Group, LLC, 380 B.R. 677 (Bankr. S.D.N.Y. January 23, 2008). In Food Management, the chapter 11 trustee brought an adversary proceeding to recover from a law firm that had represented chapter 11 debtors-in-possession for the firms' alleged misconduct in connection with the auction sale of the debtors' assets and their negligence. In its decision on a motion to dismiss, the court held, inter alia, that the allegations in the chapter 11 trustee's complaint were sufficient to state a claim against debtors' counsel for breach of their fiduciary

duties to the estate. The Court observed that "[t]he existence of a fiduciary duty of the debtor's counsel to the estate (as opposed to the duty to the debtor in possession) stands on a somewhat different footing and has been the subject of conflicting decisions among bankruptcy and district courts." Id. at 706. Citing the case upon which the Trustee relied at the hearing, the Court concluded that "[t]he majority rule is that the attorney for a debtor in possession is a fiduciary of the estate." Id. at 707 (citation omitted). The scope of such fiduciary duties is narrower than a lawyer's duties to its client. Id. at 708. However, counsel does not have a fiduciary duty to particular creditors. ICM Notes, Ltd. v. Andrews & Kurth, LLP, 278 B.R. 117, 126 (Bankr. S.D. Texas 2002), aff'd, 324 F.3d 768 (5th Cir. 2003).

Under the circumstances presented in this case, the Court finds that while counsel have argued that they had no fiduciary duty to the debtor's estate, counsel's actions have not constituted a breach of that duty. As previously noted, this Court has ruled that the fraudulent conveyances, as found by the matrimonial court in the state court action, were fully unwound by the payment form the Entity Debtors to the Hirsch Estate.

## CONCLUSION

Stein Riso has applied for an Order approving total payment of $232,675.31 in legal fees and expenses. Haspel has applied for a total payment of $139,913.89 in legal fees and expenses. The Office of the United States Trustee, Counsel for the Internal Revenue Service and the Chapter 7 Trustee have argued that the Applications should be denied, or, if granted, that the amount awarded reflect a substantial reduction from the payment amounts requested. The Court agrees that a substantial reduction in the amount of the award is warranted in light of the counsels' failure to acknowledge the existence of a fiduciary duty to the debtor's estate, the results obtained and deficiencies in the billing documents submitted. For the reasons set forth

17

more fully above, the Court grants the Applications as follows: the Court awards Stein Riso and Haspel a total of One Hundred Eighty Thousand Dollars ($180, 000.00), to be allocated between Stein Riso and Haspel as they deem appropriate. The amount is to be distributed as follows: $150,000.00 within ten days of this Decision and Order, and $30,000.00 upon the final meeting of creditors.

     IT IS SO ORDERED.

Dated: Brooklyn, New York
       December 11, 2008

                                      <u>S/Dennis E. Milton</u>
                                      DENNIS E. MILTON
                                      United States Bankruptcy Judge